upon 14,731 pounds of tallow not contained therein. The tare of containers appearing upon the invoices was adopted by the appraiser as the proper tare. The controversy therefore arises over the quantity of tallow imported.

The evidence discloses that the importer caused the merchandise to be weighed by certain public weighers upon an accurate and improved beam scale on pier B, the place of unlading; that there were 1,861 barrels and 125 drums containing tallow; that each of the barrels and drums was weighed separately. Thereafter they were laden upon railway cars of the Reading Railroad for transportation to the plant of Fels Co. Customs inspectors weighed the railway cars in their light condition upon railway scales. Customs inspectors also weighed the cars in their filled condition upon railway scales. At the time of weighing the filled cars, the cars were sealed and the inspectors had no knowledge of the contents of the particular cars weighed by them. The foreman of Fels Co. testified that he superintended the unloading of the cars containing the tallow in question and found some of the cars filled to capacity, having 2 layers of tallow barrels; that in between the layers were planks of oak or gum from ⅞ to 1 inch thick so that the upper containers rested upon the planks, and that there were also 3- x 4-inch braces placed across the doors in all of the cars; that this extra material known as dunnage was used to keep the containers of tallow from shifting in the cars and was removed and stored at the plant, but not weighed.

From the evidence submitted, including various exhibits admitted on behalf of both parties hereto, it is clear that the customs inspectors who weighed the tallow after it had been sealed in the railway cars had no personal knowledge whether or not there was anything inside the cars other than the containers of tallow. On the other hand, the uncontradicted testimony of the plaintiff establishes that there was considerable dunnage contained in 13 of the freight cars, which was not included in the tare of the railway cars. The only conclusion therefore is that the weight of such dunnage was included in the weight of the tallow reported by the Government weighers.

Inasmuch as each and every drum and barrel of the merchandise was weighed by city weighers upon the pier after unlading and upon scales tested for accuracy, we hold that such weights should be taken as the dutiable net weight of the merchandise. The difference between such weights and the Government weights establishes that duty was taken upon 14,731 pounds of tallow in excess of the quantity imported, as claimed.

Judgment will therefore be entered in favor of the plaintiff directing the collector to reliquidate the entries making refund for all duties taken in excess.

BEFORE THE FIRST DIVISION, NOVEMBER 26, 1943

**No. 48988.**—Protest 103460–K of Dealers Liquor Co. (New York).

Opinion by OLIVER, P. J. The collector's letter and statement on the entry referred to therein was admitted in evidence at the trial without objection of the Government. As these bottles were withdrawn from warehouse subsequent to the effective date of said Mexican Trade Agreement the claim at ⅛ cent per pound was sustained.

**No. 48989.**—Protest 102674–K of Capitol Wine & Spirit Corp. (New York).

Opinion by OLIVER, P. J. The collector's letter and statement on the entry referred to therein was admitted in evidence at the trial without objection of the Government. As these bottles were withdrawn from warehouse subsequent to the effective date of said Mexican Trade Agreement, the claim at ⅛ cent per pound was sustained.

**No. 48990.**—Protest 102789–K of Federal Wine & Liquor Co. (New York).

Opinion by OLIVER, P. J. The collector's letter and statement on the entry referred to therein was admitted in evidence at the trial without objection of the Government. As these bottles were withdrawn from warehouse subsequent to the effective date of said Mexican Trade Agreement the claim at ⅛ cent per pound was sustained.

**No. 48991.**—Protest 102792–K of J. & J. Distributing Co. (New York).

Opinion by OLIVER, P. J. The collector's letter and statement on the entry referred to therein was admitted in evidence at the trial without objection of the Government. As these bottles were withdrawn from warehouse subsequent to the effective date of said Mexican Trade Agreement, the claim at ⅛ cent per pound was sustained.

**No. 48992.**—Protest 103444–K of 21 Brands, Inc. (New York).

Opinion by OLIVER, P. J. The collector's letter and statement on the entry referred to therein was admitted in evidence at the trial without objection of the Government. As these bottles were withdrawn from warehouse subsequent to the effective date of said Mexican Trade Agreement the claim was sustained.

**No. 48993.**—Protest 103623–K of Standard Wine & Liquor Co., Inc. (New York).

Opinion by OLIVER, P. J. The collector's letter and statement on the entry referred to therein was admitted in evidence at the trial without objection of the Government. As these bottles were withdrawn from warehouse subsequent to the effective date of said Mexican Trade Agreement the claim at ⅛ cent per pound was sustained.